**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR PALOMARES, | No. C-11-4515 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |
| MICHAEL J. ASTRUE, Commissioner, Social Security Administration, | |
| Defendant. | **(Docket Nos. 18, 19)** |
| _____/ | |

On November 24, 2006, Victor Palomares filed for disability insurance benefits and supplemental security income ("SSI"). During administrative proceedings, his claim was denied. Mr. Palomares has exhausted his administrative remedies with respect to his claim of disability and has sought judicial review of the Commissioner's denial of benefits through this action. The Court has jurisdiction for judicial review pursuant to 42 U.S.C. § 405(g). Mr. Palomares has moved for summary judgment for an award of benefits or, in the alternative, remand for additional proceedings. The Commissioner has cross-moved for summary judgment. Having considered the parties' briefs and accompanying submissions, the Court hereby **GRANTS** Mr. Palomares' motion for summary judgment, **DENIES** the Commissioner's motion, and **REMANDS** to the agency for further proceedings.

///

///

///

United States District Court

For the Northern District of California

# I. BACKGROUND

Mr. Palomares was born on May 15, 1949, making him an individual of "advanced age" on the alleged disability onset date.[1] AR 29. Prior to his alleged disability onset date, Mr. Palomares had been working for a meat-packing company in shipping and receiving as a forklift operator since 1989. AR 90. His responsibilities included operating a forklift, stocking, taking the temperature of stock in the freezer, and loading and unloading boxes that weighed 50 pounds frequently, and up to 80 pounds occasionally. AR 90-91. In 2004, Mr. Palomares was driving a stand-up forklift at work when he hit a pothole. AR 194. Mr. Palomares had his left arm on the steering mechanism of the forklift and his arm was jerked severely upon hitting the pothole. AR 194-95. He experienced throbbing, pulsating, and sharp left shoulder pain that traveled to his hand and chest. AR 25. Mr. Palomares also reported that his forearm to his left wrist became numb so that he could not use them. *Id.* The pain he experienced was brought on by movement, lifting, showering, and minor yard work, and lasted for three to four hours at a time. *Id.* Mr. Palomares was unable to lie on his left side or lift more than ten pounds with that arm, and it was painful to reach overhead. *Id.* He underwent a left rotator cuff tear surgery on December 15, 2004 and returned to work at a less physically demanding position in April 2005.[2] AR 24, 195. However, Mr. Palomares was still experiencing pain and was unable to continue work after June 2005. AR 195. At this time, Mr. Palomares was placed on total temporary disability. *Id.*

Mr. Palomares filed for disability insurance benefits and SSI on November 24, 2006, claiming an inability to work based on his injury and subsequent repair surgery in 2004. AR 194-95. The Social Security Administration ("SSA") denied his applications initially and upon reconsideration in 2007 and 2008. AR 22. Mr. Palomares subsequently retained counsel and requested a hearing by an Administrative Law Judge ("ALJ"). *Id.* The hearing was conducted on

---

[1] A "person of advanced age" is defined by the regulations as an individual over the age of 55. 20 C.F.R. 404.1563, 416.963.

[2] It is not clear what Mr. Palomares' exact position was when he returned to work after his injury. In the Disability Report Form SSA-3368, Mr. Palomares reported that during April 2005 to June 2005, he worked in shipping and receiving but did not operate a forklift. AR 90. During the hearing, Mr. Palomares explained that he "helped the women in light work" and would "give them the dishes where they put the bacon" that did not "weigh more than five pounds." AR 294.

May 7, 2009 in San Jose, CA. *Id.* At the hearing, the ALJ heard testimony from Mr. Palomares and a vocational expert ("VE"). *Id.*

On June 3, 2009, the ALJ concluded that Mr. Palomares suffered from severe impairments but that he was not entitled to disability benefits because he was capable of performing his past relevant work as an industrial-truck operator.[3] AR 29. In the alternative, the ALJ found that Mr. Palomares could perform other work as well and thus was not disabled. *Id.* The ALJ evaluated Mr. Palomares' claim of disability using the five-step sequential evaluation process for disability required under 20 C.F.R. §§ 404.1520 and 416.920.

> Step one disqualifies claimants who are engaged in substantial gainful activity from being considered disabled under the regulations. Step two disqualifies those claimants who do not have one or more severe impairments that significantly limit their physical or mental ability to conduct basic work activities. Step three automatically labels as disabled those claimants whose impairment or impairments meet the duration requirement and are listed or equal to those listed in a given appendix. Benefits are awarded at step three if claimants are disabled. Step four disqualifies those remaining claimants whose impairments do not prevent them from doing past relevant work. Step five disqualifies those claimants whose impairments do not prevent them from doing other work, but at this last step the burden of proof shifts from the claimant to the government. Claimants not disqualified by step five are eligible for benefits.

*Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003).

At step one, the ALJ stated that there was no evidence that Mr. Palomares had engaged in substantial gainful activity since December 15, 2004, the alleged disability onset date. AR 24. Although Mr. Palomares had returned to work after the alleged onset date between April 2005 to June 2005, the ALJ concluded that this was an unsuccessful work attempt since Mr. Palomares could not actually perform his duties due to his medical condition. *Id.*

At the second step, the ALJ concluded that Mr. Palomares suffered from the following severe impairments: rotator cuff injury, depression, and hearing loss. *Id.* The ALJ relied most heavily on

---

[3] Mr. Palomares' previous work as a forklift operator falls under the title "Industrial-Truck Operator" in the Dictionary of Occupational Titles ("DOT"). The following is a portion of the description of the job: "Drives gasoline-, liquefied gas-, or electric-powered industrial truck equipped with lifting devices, such as forklift...to push, pull, lift, stack, tier, or move products, equipment, or materials in warehouse, storage yard, or factory: Moves levers, and presses pedals to drive truck and control movement of lifting apparatus..." DOT Code 921.683-050.

United States District Court
For the Northern District of California

the opinion of examining physician Dr. Ben-Aviv, who diagnosed Mr. Palomares with left shoulder impingement with decreased range of motion status post rotator cuff surgery; left side carpal tunnel syndrome symptoms with decreased grip strength; positive Tinel's sign; trapezius strain; and lateral epicondylitis symptoms. AR 27-28. Treating physician Dr. Romalis diagnosed Mr. Palomares' depression, along with insomnia and problems with anxiety, for which she prescribed him the antidepressants Zoloft and Trazodone. AR 256-57. She also prescribed Naprosyn for shoulder pain and Prilosec for dyspepsia. *Id.* The record also shows that Mr. Palomares has severe right and moderate left hearing loss due to bone conduction greater than air bilaterally and decreased bone conduction in the right ear. AR 28. He has had a left hearing aid since before the alleged onset date but had not yet obtained one for his right ear as of the hearing date because he does not have insurance. AR 297.

At the third step, the ALJ determined that none of these impairments or combination of impairments were listed in or were the medical equivalent of an impairment listed in the relevant appendix. AR 25.

At the beginning of step four, the ALJ concluded that Mr. Palomares has the residual functional capacity ("RFC") to perform heavy work as defined in 20 C.F.R. § 416.967(a) except on the left side.[4] On the left side, the ALJ determined that Mr. Palomares could "only lift and or carry 10 pounds frequently, and 20 pounds occasionally, occasionally push or pull, reach, and reach overhead with the left upper extremity." *Id.* The ALJ also concluded that Mr. Palomares is limited to occupations that do not require fine hearing capability and that he can only perform work with one or two step tasks. *Id.* The ALJ rejected Mr. Palomares' excess pain testimony, finding that while the "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]...the claimant's statements concerning the intensity and persistence and limited effects of these symptoms are not credible to the extent that they are inconsistent with the...[RFC] assessment." AR 26. To support this adverse credibility finding, the ALJ reasoned that

---

[4] The regulations define "heavy work" as work that "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work." 20 C.F.R. § 416.967.

United States District Court

For the Northern District of California

1  despite his claims of disabling pain, Mr. Palomares was only prescribed Naprosyn without any

2  stronger pain medications, was not on any medicine when he was examined by physicians in

3  December 2006 and February 2008, could perform some household chores, went outside two to

4  three times daily, and could at times relieve his pain simply by resting, exercising, or using an ice

5  pack.  *Id.*

6      At step four, the ALJ relied on two hypotheticals posed to a VE in which Mr. Palomares was

7  given a heavy RFC limited to occasional pushing, pulling and reaching on the left side.  AR 311-12.

8  For the second hypothetical, the ALJ added the restriction of lifting ten pounds frequently and 20

9  pounds occasionally on the left side.  AR 312.  Both hypotheticals had a limitation for no fine

10 hearing.  AR 311-12.  Based on these limitations, the VE testified for both hypotheticals that Mr.

11 Palomares could perform his previous occupation as it is described in the DOT.  *Id.*  Thus, the ALJ

12 concluded that Mr. Palomares could perform his past relevant work as a forklift operator and was

13 therefore not disabled.  AR 29.

14     Although he had already found that Mr. Palomares was not disabled at step four, the ALJ

15 continued to the fifth step to determine that "considering the claimant's age, education, work

16 experience, and [RFC], there are jobs that exist in significant numbers in the national economy that

17 the claimant can perform." AR 29.  To make this determination, the ALJ applied the Medical-

18 Vocational Guidelines ("grids") based on a "[RFC] for the full range of heavy work."  *Id.*  The ALJ

19 concluded that Mr. Palomares was not disabled under sections 261(I), 223(d), and 114(a)(3)(A) of

20 the Social Security Act from December 15, 2004 through the date of the hearing.  AR 30.

21     Mr. Palomares requested review of the ALJ's unfavorable decision by the Appeals Council.

22 AR 13-15.  Supplementing this request, Mr. Palomares submitted the assessment of his then treating

23 physician, Dr. Ho, and the Appeals Council made the document part of the record on August 8,

24 2011.  AR 9.  This additional evidence was a physical RFC questionnaire that indicated that Dr. Ho

25 had seen Mr. Palomares regularly since 2008.  AR 282.  Based on the results of an x-ray taken on

26 July 9, 2010, the questionnaire identified a decreased range of motion at the left shoulder and neck,

27 and calcific tendinitis of the left shoulder as a result of Mr. Palomares' surgery in 2004.  The opinion

28 noted that Mr. Palomares reported a constant pain of seven out of ten that was exacerbated by

1   motion and reaching.  *Id.*  It was consistent with Dr. Ho's progress notes that were part of the record

2   considered by the ALJ that show that Dr. Ho had prescribed Ibuprofen 800 for Mr. Palomares' pain.

3   AR 262-63.  Dr. Ho also opined that depression contributes to the severity of Mr. Palomares'

4   symptoms and that he was only capable of low stress jobs due to his "severe" depressive symptoms.

5   AR 283.

6          On August 8, 2011, the Appeals Council denied Mr. Palomares' request for review,

7   concluding that the additional evidence did not provide a basis for challenging the ALJ's decision.

8   AR 5-6.  Mr. Palomares then sought judicial review through this action and requested that the case

9   be remanded to the Commissioner with instructions to award all disability benefits due to him, or

10  alternatively, with instructions regarding proceedings on remand.  Plaintiff's Motion at 1.  Mr.

11  Palomares argues that (1) the Appeals Council improperly rejected the opinion of Dr. Ho and that

12  the new evidence materially undermines the ALJ's adverse finding; (2) the ALJ failed to give

13  reasons for the VE's deviation from the DOT; (3) the ALJ improperly concluded that Mr. Palomares

14  could communicate in English and erred in omitting his communication limitation in steps four and

15  five; and (4) the ALJ erred in applying the grids at step five.  The Court will address each of these

16  arguments in turn.

17                              **II.   LEGAL STANDARD**

18         Administrative decisions in Social Security Disability cases are reviewed under a

19  "substantial evidence test."  *See Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001).  A district court

20  may disturb the final decision of the SSA "only if it is not supported by substantial evidence or if it

21  is based on legal error."  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005) (internal

22  quotation marks omitted).  The Ninth Circuit has stated that "[s]ubstantial evidence means more than

23  a scintilla but less than a preponderance."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002)

24  (internal quotation marks omitted).  It is "relevant evidence which, considering the record as a

25  whole, a reasonable person might accept as adequate to support a conclusion.  Where evidence is

26  susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the

27  ALJ's conclusion must be upheld."  *Id.*  (internal quotation marks omitted).

28

<div align="left" style="writing-mode: vertical-rl">**United States District Court**
For the Northern District of California</div>

### III.   <u>DISCUSSION</u>

A.      <u>Opinion of Dr. Ho</u>

Mr. Palomares argues first that the Appeals Council failed to "properly consider" the opinion of his treating physician, Dr. Ho, which he submitted to the Appeals Council with his request for review of the ALJ's decision after the ALJ hearing.[5]  Plaintiff's Reply at 2 n.1, 5.  He further contends that properly crediting the opinion would "clearly result in a finding that [he is] disabled." *Id.*  While this new opinion was written after the ALJ's decision, Dr. Ho had been treating Mr. Palomares regularly since 2008 and her opinion is consistent with the treatment records that had been a part of the record at the time the ALJ made his decision.  AR 283-85.  Because the opinion discusses Mr. Palomares' ongoing shoulder problems and other impairments that had been diagnosed before the hearing date, the opinion relates to the period adjudicated by the ALJ.  AR 286. As such, Mr. Palomares asks the Court to reverse the decision of the ALJ and remand the case because proper consideration of Dr. Ho's opinion "would clearly result in a finding that [he] was disabled."  Reply at 5.  However, given that Dr. Ho's assessment was not made a part of the record until after the hearing before the ALJ, the Commissioner disputes this Court's consideration of it as part of the record in its review of the ALJ's decision.  Defendant's Motion at 2.

Because it was submitted after the ALJ's decision to the Appeals Council who denied review, and because Dr. Ho was Mr. Palomares' treating physician, the additional evidence raises three issues: (1) whether the Appeals Council was required to make specific evidentiary findings regarding its decision to reject the opinion of a claimant's treating physician; (2) whether the Court should consider the new evidence as a part of the record in reviewing the decision of the ALJ; and (3) if the evidence is to be considered on review, whether its addition to the record shows that the ALJ's findings were not supported by substantial evidence.

---

[5]  In his Motion for Summary Judgment, Mr. Palomares argues that the Appeals Council ignored Dr. Ho's assessment.  However, Mr. Palomares amended his argument to state that the Appeals Council's discussion of Dr. Ho's assessment in its decision was inadequate and factually incorrect.  Reply at 2 n 1.

United States District Court
For the Northern District of California

1.      Standard for the Appeals Council's Rejection of a Treating Physician's Opinion

Mr. Palomares argues that because Dr. Ho was a treating physician and the Appeals Council gave "no appropriate reasons" for the rejection of her opinion, failure to "properly consider" this evidence was reversible error.[6]  Plaintiff's Reply at 5.  In rejecting Dr. Ho's opinion, the Appeals Council stated that it is "persuaded that this assessment was based in great part on [Mr. Palomares'] subjective complaints being fully credited."  AR 6.  Additionally, the Appeals Council stated that it is "persuaded that the [ALJ's] decision is appropriate and consistent supported by substantial evidence" and found that Dr. Ho's opinion "does not provide a basis for changing the [ALJ's] decision."  *Id.*

The opinions of treating physicians are generally favored over the opinions of non-treating physicians.  *See* 20 C.F.R. § 404.1527.  This is because a treating physician is "employed to cure and has a greater opportunity to know and observe the patient as an individual."  *Ramirez v. Shalala*, 8 F.3d 1449, 1453 (9th Cir. 1993).  A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with other substantial evidence in the record.  Social Security Ruling ("SSR") 96-2p.  If the ALJ rejects a treating physician's opinion that is contradicted by another physician's, the ALJ must provide "specific and legitimate reasons" supported by substantial evidence in the record.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).

If the Appeals Council was required to give specific and legitimate reasons for disregarding Dr. Ho's opinion, the brief and conclusory rejection that it gave would not have been legally

---

[6]  Mr. Palomares cites 20 C.F.R. § 404.1527(b) and (d) to support this claim. While § 404.1527(b) states that "[i]n deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive," and (d)(2) states that "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion,' these subsections govern how the ALJ and the Appeals Council consider evidence when making decisions on a claimant's disability status and whether he is entitled to benefits.  Subsection (f)(3) of the same section states that "[w]hen the Appeals Council *makes a decision*, it will follow the same rules for considering opinion evidence as administrative law judges follow."  20 C.F.R. § 404.1527(b) and (d) (emphasis added).  The regulations are silent on whether the Appeals Council must provide any reasons for rejecting a treating physician's opinion when, as here, the Appeals Council has declined to review the ALJ's decision and thus has not itself made a decision on the claimant's disability status.

United States District Court
For the Northern District of California

1  sufficient because it failed to address the uncontroverted parts of Dr. Ho's opinion that are not based

2  solely on Mr. Palomares' subjective complaints. However, while the ALJ must provide adequate

3  justification for the rejection of a treating physician's opinion, and the Appeals Council must do the

4  same if it reviews the ALJ's decision and reaches its own ruling on a claimant's disability status, it

5  does not necessarily follow that the Appeals Council must make particular evidentiary findings

6  when, as here, it has denied review of the ALJ's decision.

7          Ninth Circuit precedent is arguably ambiguous on the issue of "whether District Courts in the

8  Ninth Circuit should continue to impose on the Appeals Council the same requirements for rejecting

9  newly submitted medical opinions as the courts impose on ALJs for rejecting previously submitted

10  medical opinions." *Warner v. Astrue*, --- F. Supp. 2d ----, No. ED CV 11-907-DMG(E), 2012 WL

11  1657739, at *7 (C.D. Cal. Apr. 26, 2012) (summarizing the uncertainty of whether the Appeals

12  Council is required to give legally sufficient reasons for rejecting the opinions of treating

13  physicians). In *Ramirez v. Shalala*, the Appeals Council had considered a treating physician's

14  opinion submitted after the ALJ's decision, along with the rest of the record, in order to conclude

15  that the ALJ's decision needed no review. *Ramirez*, 8 F.3d at 1452. On appeal, the Ninth Circuit

16  held that it was error for the Appeals Council to fail to explain why it rejected this evidence, stating

17  that "neither the ALJ *nor the Appeals Council* gave *any* reason – let alone a 'specific, legitimate'

18  reason based on substantial evidence – for disregarding [the treating physician's] diagnosis." *Id.* at

19  1453-54 (emphasis added). However, in *Gomez v. Chater*, the Court subsequently held that the

20  Appeals Council was "not required to make any particular evidentiary finding" in rejecting a report

21  from a VE obtained by the claimant after the ALJ's adverse decision. *Gomez v. Chater*, 74 F.3d

22  967, 972 (9th Cir. 1996).

23          District courts in this circuit generally had not extended the *Gomez* rule to post-evidentiary

24  evidence from treating physicians, relying instead on *Ramirez* to hold the Appeals Council to the

25  same standard as the ALJs for rejecting the opinions of treating physicians. *See, e.g.*, *Siska v.

26  Barnhart*, No. c00-4788 MMC, 2002 WL 31750220 at *5 (N.D. Cal. Dec. 4, 2002) ("[T]he Appeals

27  Council considered the opinions of [the treating physician and his intern], but found those opinions

28  did not provide a basis for changing the ALJ's decision. In so ruling, the Appeals Council did not

United States District Court
For the Northern District of California

1    provide any specific and legitimate reasons for its conclusion, and thus erred."); *Luckett v. Astrue*,

2    No. 2:09-cv-00037 KJN, 2010 WL 3825703, at *9 (E.D. Cal. Sept. 28, 2010) (holding that the

3    Appeals Council erred by only providing a non-specific "boilerplate" reason for disregarding a

4    treating physician's opinion); *Jester v. Astrue*, No. EDEV 09-0158-JEM, 2010 WL 368877 (C.D.

5    Cal. Jan. 27, 2010) ("The Appeals Council should have set forth specific and legitimate reasons

6    supported by substantial evidence for rejecting [the treating physician's] statement....").

7        However, the Ninth Circuit has more recently held that the district court does not have

8    jurisdiction to review whether or not the Appeals Council correctly denied a request for review of an

9    ALJ's decision. *See Taylor v. Comm'r of Soc. Sec.*, 659 F.3d 1228, 1231 (9th Cir 2011) ("When the

10   Appeals Council denies a request for review, it is a non-final agency action not subject to judicial

11   review because the ALJ's decision becomes the final decision of the Commissioner."). As the

12   district court noted in *Warner*, the Ninth Circuit's decision in *Taylor* casts doubt on this narrow

13   interpretation of *Gomez*. *Warner*, 2012 WL 1657739 at *6. In *Taylor*, the Appeals Council had

14   denied review after receiving new evidence including an opinion from the claimant's treating

15   physician. *Taylor*, 659 F.3d at 1231. The Court in *Taylor* stated the following:

16          Taylor is not effectively asking for a "ruling that the Appeals Council
          must provide [a] detailed rationale whenever faced with new
17         evidence." If he were, Taylor's request would be barred by *Gomez v.*
          *Chater*, where we held that "the Appeals Council [was] not required to
18         make any particular evidentiary finding" when it rejected evidence
          from a vocational expert obtained after an adverse administrative
19         decision. 74 F.3d 967, 972 (9th Cir. 1996).

20   *Id.* at 1232. As explained by *Warner*, "[b]y invoking *Gomez* in the manner in which it did, the

21   *Taylor* Court evinced an understanding that the rule of *Gomez* applies not only to post-hearing

22   vocational opinions, but also to post-hearing treating physician opinions, thereby excusing the

23   Appeals Council from offering any explanation for rejecting such opinions." *Warner*, 2012 WL

24   1657736 at *6. Another recent district court case acknowledged the inconsistency in precedent and

25   concluded that "[a]s recognized in *Taylor*, *Gomez* precludes a court from establishing a rule

26   requiring the Appeals Council to make detailed findings when presented with new opinions."

27   *Coleman v. Astrue*, No. 11-0445, 2012 WL 987735, slip op., at *8-9, (S.D. Cal. Feb. 14, 2012)

28   (collecting cases interpreting *Gomez* to apply to a treating physician's report rejected by the Appeals

United States District Court

For the Northern District of California

1   Council); *see also Mooney v. Comm'r of Soc. Sec. Admin.*, No. 11-1251-JPR, 2012 WL 2150855, at

2   \*6 (E.D. Cal. June 12, 2012) (broadly interpreting *Gomez* in light of *Taylor* to decide that "[t]he

3   Appeals Council is not required to make any particular evidentiary finding when rejecting evidence

4   submitted after an adverse administrative decision.").  *Coleman* reasoned that since the reviewing

5   court neither affirms nor reverses the Appeals Council's decision, but rather reviews the ALJ's

6   decision, "it makes sense that the court would not evaluate whether the Appeals Council made

7   sufficient findings."  *Coleman*, 2012 WL 987735 at \*9; *see also Lewis v. Astrue*, No. 3:11-cv-05482,

8   2012 WL 1022219 (W.D. Wash. Mar. 5, 2012) (reasoning that the Appeals Council did not have to

9   provide legally sufficient reasons for rejecting evidence since the reviewing court lacks jurisdiction

10  to review the Appeals Council's denial of [a] plaintiff's request for review).

11         The Court is persuaded that given the role of this reviewing court apparently assigned by the

12  Ninth Circuit's recent decision in *Taylor*, the Appeals Council is not required to give specific and

13  legitimate reasons for its rejection of a treating physician's evidence when it does not review the

14  ALJ's decision. Accordingly, in the instant case, the sufficiency of the Appeals Council's

15  perfunctory explanation for the rejection of Dr. Ho's opinion will not be considered as a grounds for

16  reversal.

17         2.    Consideration of New Evidence by the Reviewing Court

18         However, regardless of the level of specificity the Appeals Council must provide for

19  rejecting a treating physician's opinion, the reviewing court must still consider the rejected opinion

20  of the treating physician as a part of the entire record to determine "whether, in light of the record as

21  a whole, the ALJ's decision was supported by substantial evidence and was free of legal error."

22  *Taylor*, 659 F.3d at 1232; *see also Ramirez*, 8 F.3d at 1452 ("[W]e consider on appeal both the

23  ALJ's decision and the additional material submitted to the Appeals Council.").  The Ninth Circuit

24  has recently affirmed *Ramirez* in holding that new evidence considered but rejected by the Appeals

25  Council is properly a part of the record before a reviewing court.

26              We hold that when a claimant submits evidence for the first time to the
                Appeals Council, which considers that evidence in denying the review

27              of the ALJ's decision, the new evidence is part of the administrative
                record, which the district court must consider in determining whether

28              the Commissioner's decision is supported by substantial evidence.

United States District Court

For the Northern District of California

1   *Brewes v. Comm'r of Soc. Sec. Admin.*, ---F.3d ----, 2012 WL 2149465, *1 (9th Cir. June 14, 2012).

2          The Commissioner argues that this Court should not consider Dr. Ho's evidence because Mr.

3   Palomares has failed to satisfy the criteria of sentence six of 42 U.S.C. § 405(g).  This section allows

4   a reviewing court to remand for consideration of additional evidence only if a plaintiff shows that

5   (1) new evidence is material to his disability; and (2) he has good cause for failing to submit the

6   evidence earlier.  42 U.S.C. § 405(g).  While there may have been some ambiguity on the

7   applicability of sentence six prior to the *Brewes* decision, the Ninth Circuit has now made it clear

8   that these criteria do not apply to evidence such as Dr. Ho's opinion because "evidence submitted to

9   and considered by the Appeals Council is not new but rather is part of the administrative record

10  properly before the district court."  *Brewes*, 2012 WL 2149465 at *5 (holding that Section 405(g)

11  "only applies to new evidence that is not a part of the administrative record and is presented in the

12  first instance to the district court").  Since sentence six is not applicable to the instant case, the Court

13  must consider Dr. Ho's opinion in its review of the ALJ's decision.

14          3.        The Effect of Dr. Ho's Opinion on the ALJ's Findings

15          The Commissioner next contends that Dr. Ho's opinion should not affect the analysis of

16  whether the ALJ's decision is supported by substantial evidence since, as noted by the Appeals

17  Council, it is based "in great part" on Mr. Palomares' subjective complaints being fully credited.

18  Defendant's Motion at 4.  Citing *Bayliss v. Barnhart*, the Commissioner argues that since the ALJ

19  gave "clear and convincing reasons" that Mr. Palomares was not entirely credible, Dr. Ho's opinion

20  provides no basis for changing the ALJ's decision and need not be considered by the Court.  *Bayliss

21  v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (holding that an ALJ may reject a physician's

22  finding that is unsupported by the record or premised on a claimant's properly discredited subjective

23  complaints).

24          However, Dr. Ho's opinion is material to the conclusions reached by the ALJ and, if

25  considered, could well alter the ALJ's decision.  Dr. Ho's opinion is material in several aspects.  *See

26  Taylor*, 659 F.3d at 1235 ("Remand for further proceedings is appropriate where there are

27  outstanding issues that must be resolved before a disability determination can be made, and it is not

28

1   clear from the record that the ALJ would be required to find the claimant disabled if all the evidence

2   were properly evaluated.").

3          First, unlike *Bayliss*, in which the ALJ rejected a physician's opinion that "was not supported

4   by clinical evidence and was based on Bayliss's subjective complaints," 427 F.3d at 1217, here Dr.

5   Ho's opinion explicitly relies on objective signs such as Mr. Palomares's decreased range of motion

6   in both the left shoulder and neck, an x-ray identifying calcific tendinitis in the left shoulder, and his

7   surgery in 2004.  AR 282.  Dr. Ho uses this objective information to support her findings that Mr.

8   Palomares suffers from functional limitations – including, *inter alia*, his inability to lift weight of

9   twenty pounds or above, his limited movement in the head and neck, and limited ability to twist,

10  stoop, crouch, climb, and reach – and that his limitations cause him chronic and severe left shoulder

11  and neck pain.  AR 282-83, 285.  The opinion is also consistent with the record as it stood before the

12  ALJ, which included treatment notes indicating that Dr. Ho had prescribed Ibuprofen 800 for Mr.

13  Palomares' chronic pain in 2008.  AR 262.  Dr. Ho did not rely solely or substantially on Mr.

14  Palomares' self-reported pain which the ALJ rejected; rather, her opinion is based on objective

15  clinical observation and evidence.

16         Second, in addition to the objective clinical findings, Dr. Ho found that Mr. Palomares

17  suffered from depression which contributed to the severity of his pain symptoms, and also limited

18  him to jobs with low work stress because his "depressive symptoms are severe."  AR 283.  This is

19  consistent with the record showing that Mr. Palomares was diagnosed with depression, anxiety, and

20  insomnia by Dr. Romalis who prescribed him the antidepressants Zoloft and Trazodone in 2009.

21  AR 256-58.  At the time of the hearing, Mr. Palomares was not taking his prescribed medications

22  because he could not afford them without insurance and does not qualify for Medi-Cal.  AR 302.

23         Factors such as pain and depression are relevant to an ALJ's calculation of a claimant's RFC,

24  which is an  "administrative assessment of the extent to which an individual's medically

25  determinable impairment(s), including any related symptoms, such as pain, may cause physical or

26  mental limitations or restrictions that may affect his or her capacity to do work-related physical and

27  mental activities."  SSR 96-8p, 1996 WL 374184 at *5.  In determining the RFC, an ALJ must

28  consider "whether the aggregate of [the claimant's] mental and physical impairments may so

United States District Court

For the Northern District of California

1    incapacitate him that he is unable to perform available work." *Light v. Soc. Sec. Admin.*, 119 F.3d

2    789, 793 (9th Cir. 1997); *see also* 20 C.F.R. § 404.1545(a)(2) ("We will consider *all* of your

3    medically determinable impairments of which we are aware, including your medically determinable

4    impairments that are not 'severe' when we assess your residual functional capacity.") (emphasis

5    added).[7]

6        The ALJ found that Mr. Palomares' depression was a "severe impairment" at step two of the

7    analysis.[8]  However, despite finding that Mr. Palomares suffered from the severe impairment of

8    depression at step two, the ALJ did not consider the effects of depression on Mr. Palomares' pain

9    credibility.  The ALJ's conclusion, *inter alia*, was based on the findings that the plaintiff was only

10   prescribed Naprosyn, an anti-inflammation drug, for his pain, was not taking any pain medications

11   on December 2006 and February 2008, could perform some household chores, went outside two to

12   three times daily, and could at times relieve his pain simply by resting, exercising, or using an ice

---

13   [7] A "medically determinable impairment" is a physical or mental impairment that is
14   established by medical evidence consisting of signs, symptoms, and laboratory findings, and not
     only by the claimant's statement of symptoms.  20 C.F.R. § 404.1508.  "Symptoms" are the
15   claimant's own description of his or her impairments, "signs" are anatomical, physiological, or
     psychological abnormalities which may be observed, and "laboratory findings" are anatomical,
16   physiological, or psychological phenomena which can be shown by the use of medically acceptable
     laboratory diagnostic techniques.  20 C.F.R. § 404.1528(a)-(c).  Psychiatric signs are "medically
17   demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities or
     behavior, mood, thought, memory, orientation, development, or perception.  They must also be
18   shown by observable facts that can be medically described and evaluated."  *Id.*

19   [8] Although Mr. Palomares did not originally allege depression when applying for benefits,
20   the ALJ found that Mr. Palomares suffered from severe depression at step two.  *See Mayes v.
     Massanari*, 276 F.3d 453, 456 (9th Cir. 2001) (noting that "[a]lthough [the claimant's] petition for
21   an administrative hearing had been based on alleged back problems, she was found disabled on the
     basis of 'severe alcoholism with depression...'")  The record as it stood when the ALJ made this
22   finding included the diagnosis by Dr. Romalis and the antidepressant prescriptions.  AR 256-58.
     The record also indicates the fact that Mr. Palomares was homeless at the time of the hearing,
23   separated from his wife and children, and no longer has any friends or belongs to any clubs or
     organizations.  AR 303-04.  At the hearing, Mr. Palomares testified that since his injury and
24   subsequent surgery, he has felt a "burst of nothing and many of the people who love [him] now
     despise [him]."  AR 308.  Furthermore, there was no contrary testimony in the record regarding the
25   depression diagnosis and the ALJ did not feel the need to further develop the record before making
     his finding on Mr. Palomares' depression.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.
26   2001) (noting that even when a claimant is represented by counsel, the ALJ has a duty to develop the
     record fully and fairly when there is ambiguous evidence or when the record is inadequate to allow
27   for a proper evaluation of evidence).  Especially with the addition of Dr. Ho's RFC assessment,
     there is substantial evidence in the record to show that Mr. Palomares was severely impaired by his
28   depression.  *See Morgan v. Apfel*, 169 F.3d 595 (9th Cir. 1999) (substantial evidence is "such
     relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

1    pack.  AR 26.  Dr. Ho, however, provided evidence of a link and causative relationship between Mr.

2    Palomare's depression and his subjective symptoms.  The examining and consulting physicians the

3    ALJ relied on did not consider the limitation caused by depression in their reports.  The ALJ should

4    consider the effects of Mr. Palomares' mental impairment as found by Dr. Ho on his experience of

5    pain in order to calculate an accurate RFC.[9]

6          In addition, the regulations explain that mental impairments must be considered as a part of

7    the RFC assessment since "a limited ability to carry out certain mental activities, such as . . .

8    responding appropriately to supervision, coworkers, and work pressures in a work setting, may

9    reduce your ability to do past work and other work."  20 C.F.R. § 404.1545(c).  In the instant case,

10   Dr. Ho found that Mr. Palomares' depression would limit him to jobs with low work stress.  AR 283.

11   Since Dr. Ho's opinion explicitly states that Mr. Palomares has a limited ability to respond to work

12   pressure, the ALJ should consider the effects of Mr. Palomares' depression on his ability to do work

13   in his RFC assessment.  *See Carmickle*, 533 F.3d at 1164 (holding that the ALJ erred by not

14   including a limitation identified by one of the claimant's treating physicians in his RFC assessment).

15         Furthermore, because the ALJ had found that Mr. Palomares' depression was a severe

16   limitation at step two, the ALJ should have considered this limitation in his assessment of the RFC

17   even without the addition of Dr. Ho's opinion to the record.  *See Orn*, 495 F.3d at 630 (noting that

18   when an ALJ has determined a claimant has a severe impairment at step two, "all medically

19   determinable impairments must be considered in the remaining steps of the sequential analysis").  It

20   is legal error for the ALJ to omit Mr. Palomares' depression in the RFC analysis or the hypothetical

21   to the VE in making his findings.  *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997).

22   The addition of Dr. Ho's opinion to the record emphasizes the necessity of making specific findings

23   relating to Mr. Palomares' depression and his ability to work.  The ALJ therefore erred in assessing

24

25   _____

26         [9]  The Commissioner urges the Court to accept the ALJ's adverse credibility finding because
     Mr. Palomares has not raised a challenge to it.  Defendant's Motion at 4 (citing *Carmickle v.
     Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address an issue
27   where the claimant "failed to argue [the] issue with any specificity in his briefing")).  While the
     Court does not directly consider the sufficiency of the ALJ's credibility determination here, it finds
28   that if the whole record including Dr. Ho's opinion were considered, the ALJ's conclusions may
     have been materially effected.

1   Mr. Palomares' RFC without considering all of his limitations and erred at steps four and five by

2   relying on this RFC.[10]

3          The RFC is used at steps four and five in order to determine whether a claimant is capable of

4   performing his previous occupation, or any other jobs in the national economy.  Since the analysis of

5   RFC was flawed and not based on the whole record, the VE's testimony based thereon "has no

6   evidentiary value," and the ALJ's finding that Mr. Palomares can perform his previous work is not

7   based on substantial evidence in the whole record.  *Id.* at 1166.  *See Taylor*, 659 F.3d at 1235

8   ("Because neither the hypothetical nor the answer properly set forth all of [the claimant's]

9   impairments, the vocational expert's testimony cannot constitute substantial evidence to support the

10  ALJ's findings." citing *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984)).

11         Thus, there is a "substantial likelihood of prejudice," such that the error discussed herein is

12  not harmless.  *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (citing *McLeod v. Astrue*,

13  640 F.3d 881, 887 (9th Cir. 2011) (holding that a claimant "need not necessarily show what other

14  evidence might have been obtained had there not been error, but does have to show at least a

15  'substantial likelihood of prejudice'" resulting from the error).  In this case, the VE testified that if

16  Mr. Palomares' symptom testimony was credited, Mr. Palomares would not be able to do his work.

17  AR 217.  Dr. Ho's opinion is thus "directly responsive to the [VE's] testimony" because it could

18  change the ALJ's credibility determination and assessment of his functional limitations.  *Brewes*,

19  2012 WL 2149465 at *5.

20         Remand is therefore warranted to allow the ALJ to consider Dr. Ho's opinion.  Mr.

21  Palomares alleges other errors at these steps as well.  The Court will address these issues.  *See*

22  *Carmickle*, 533 F.3d at 1166 (addressing other allegations of error even though the ALJ erred in

23  excluding some limitations from an RFC, rendering the VE's testimony at step four valueless).

24

25

26         [10]  The ALJ stated that he considered depression at step three of the disability analysis but
    not make any further findings.  Since Mr. Palomares has not alleged any error at step three of the
27  disability analysis, the Court does not address the issue here.  *See also Burch v. Barnhart*, 400 F.3d
    676 (9th Cir. 2005) ("An ALJ is not required to discuss the combined effects of a claimant's
28  impairments or compare them to any listing in an equivalency determination, unless the claimant
    presents evidence in an effort to establish equivalence.").

United States District Court
For the Northern District of California

B.        Consistency Between the VE's Testimony and the DOT

At step four, the ALJ found that Mr. Palomares could perform his prior work as an industrial truck driver both as he had performed it in his previous work and as it is performed generally.  AR 27.  Mr. Palomares claims that this finding is not supported by substantial evidence because the testimony of the VE is inconsistent with the job's description in the DOT.  Plaintiff's Motion at 6. While a VE may testify contrary to the DOT, an ALJ "may rely on expert testimony which contradicts the DOT, only insofar as the record contains persuasive evidence to support the deviation."  *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).  When an ALJ is relying on such testimony or using a job description in the DOT that "fails to comport with a claimant's noted limitations," he "must definitively explain this deviation."  *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001).  Evidence sufficient to permit a deviation may be "inferences drawn from the context of the expert's testimony."  *Light*, 119 F.3d at 793 (citing *Terry v. Sullivan*, 903 F.2d 1273 (9th Cir. 1990)).

In this instance, the hypotheticals posed by the ALJ limited reaching and overhead reaching on the left side to "occasionally," while the DOT's description of the industrial truck driver position, as the commissioner concedes, requires "constant" reaching.  AR 311-12, Defendant's Motion at 6. The Commissioner argues that, although "'occasionally' does not mean 'constantly,'" *Pinto*, 249 F.3d at 845 (determining that a finding that the plaintiff could not stoop, climb, or balance more than occasionally was contrary to the conclusion that he plaintiff could continue her past work as performed where constant physical movement was required), the DOT does not explicitly require constant reaching with *both* arms.  *See, e.g.*, *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000) (noting that the DOT does not contain a requirement of bilateral fingering and handling); *McConnell v. Astrue*, No. EDCV 08-667 JC, 2010 WL 1946728 at *6-7 (C.D. Cal. May 10, 2010) (holding that jobs requiring reaching and handling did not exceed the plaintiff's limitation to work with one hand when there was no express bilateral requirement in the DOT for those positions); *Feibusch v. Astrue*, No. 07-00244 BMK, 2008 WL 583554, at *5 (D. Haw. Mar. 4, 2008) (citations omitted) ("[T]he use of two arms is not necessarily required for jobs that require reaching and handling.").  Furthermore, the VE testified that his answers were consistent with the DOT and specifically considered the

1   evidence indicating that Mr. Palomares had reaching and lifting limitations on his left side only and

2   that Mr. Palomares had no limitations place on his right arm.  AR 319, 313-14.  Because the DOT

3   does not require constant reaching with both arms, the Court concludes that the VE's testimony

4   relying on this RFC did not conflict with the DOT, and thus the ALJ did not err on this issue.

5   C.        Ability to Communicate in English

6         Mr. Palomares next contends that the ALJ's finding that Mr. Palomares is able to

7   communicate in English is not supported by substantial evidence.  Plaintiff's Motion at 6.  As such,

8   Mr. Palomares argues that the ALJ's hypothetical posed to the VE during the hearing should have

9   included Mr. Palomares' language limitations at step four and that the ALJ erred in applying the

10  grids at step five when the grids did not reflect all of his limitations.  Plaintiff's Motion at 7.

11        The Ninth Circuit has explained the importance of literacy in the disability determination

12  process:

13            The ability to communicate is an important skill to be considered
              when determining what jobs are available to a claimant.  Illiteracy
14            seriously impacts an individual's ability to perform work-related
              functions such as understanding and following instructions,
15            communicating in the workplace, and responding appropriately to
              supervision.  These are all factors that Social Security Ruling No. 96-
16            8P [sic] requires an ALJ to consider when determining whether a
              claimant has the residual functional capacity to perform past relevant
17            work.

18  *Pinto*, 249 F.3d at 846.

19        It is unsettled whether a claimant's language abilities should be taken into consideration at

20  the fourth step of the analysis.  *See id.* at 846 n.5 ("We decline to reach the question of whether

21  illiteracy may properly be considered at step four of a disability determination.  The regulations

22  point in contradictory directions on this question.").  Though the Court in *Pinto* refused to reach the

23  issue of whether language abilities should be considered at step four, the Court noted that the ALJ

24  did refer to the plaintiff's illiteracy at step four and included it in his hypothetical to the VE.  *Id.* at

25  847-48.  Because the ALJ had brought up the plaintiff's illiteracy at that step, the Court held that the

26  ALJ's and the VE's failure to address the impact of a claimant's illiteracy on her ability to find and

27  perform a similar job constituted a variance from the DOT when the description for claimant's

28  previous job required the ability to recognize 2,500 two to three syllable words.  *Id.* at 847.

United States District Court

For the Northern District of California

While Mr. Palomares' previous work as defined in the DOT has the same minimum language requirement as the claimant's previous occupation in *Pinto*,[11] unlike in *Pinto*, here the ALJ explicitly found that Mr. Palomares could communicate in English to the extent that he can perform work with one or two step tasks. AR 25, 29. In assessing Mr. Palomares' RFC, the ALJ found that Mr. Palomares was limited to jobs that require one or two step tasks. AR 25. Though the ALJ did not make any further findings explaining this limitation, the Commissioner asserts that this is the upper limit of Mr. Palomares' language abilities such that it was reasonable for the ALJ to find that Mr. Palomares was capable of communicating in English to the extent that he could perform work with one or two step tasks. Defendant's Motion 8.

Because the language requirement for Mr. Palomares' previous occupation is the lowest level in the DOT, the Court assumes that the ability to communicate in English to perform one or two step tasks is consistent with the level one language requirements and the language ability found by the ALJ. While Mr. Palomares argues that this finding is erroneous and that a language limitation should have been included in the disability analysis, an ALJ is "free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." *Osenbock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001) (holding that the ALJ did not err in asking hypotheticals to the VE that did not reflect all of the claimant's alleged limitations when those omitted limitations were not supported by substantial evidence). Thus, the question is whether there was substantial evidence to

---

[11] The DOT description for each job includes a "definition trailer" which indicates the level of exertion, the amount of training, and the language, reasoning, and mathematical skills necessary to perform each job. The language development level for an Industrial-Truck Operator is level one. The DOT defines level-one language development as requiring the following:

> READING: Recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers.

> WRITING: Print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses.

> SPEAKING: Speak simple sentences, using normal word order, and present and past tenses.

DOT, app. C – Components of the Definition Trailer, 1991 WL 688702.

United States District Court

For the Northern District of California

1   support the ALJ's finding that Mr. Palomares is capable of communicating in English to the extent

2   that he can perform one or two step tasks.

3          While the ALJ did not specifically find that Mr. Palomares was literate, Mr. Palomares

4   answered at the hearing that he can read the newspaper in English, but "not everything, parts,

5   because [he doesn't] understand."  AR 291.  The Commissioner points to this statement, along with

6   instances during the hearing in which Mr. Palomares responded to questions in English, to support

7   the ALJ's findings.  Defendant's Motion at 8.  However, the instances cited by the Commissioner

8   read in context of the entire transcript show that Mr. Palomares' answers were largely limited to

9   monosyllabic words such as "yes" and "yeah" that are not obviously in response to any particular

10  question, with the exception of the phrase "in the Senior Center," which he repeated from the

11  translator.[12]  AR 295, 305, 308, 316, 319.  In addition, Mr. Palomares required an interpreter at his

12  hearing and several of his doctor's appointments, and relied on his wife to help him complete

13  questionnaires in connection with his claim for disability benefits.  AR 108-10, 119-21, 123-30.

14         Nonetheless, the Commissioner points out that there is no evidence of a translator being at

15  other doctors' appointments and that consultative examiner Dr. Ben-Aviv noted in his report that

16  Mr. Palomares "does speak English" but that his wife would help him "for some interpretation when

17  he did not understand English."  AR 223.  Given Mr. Palomares' own testimony regarding his ability

18  to read in English, the ALJ's personal observations of him at the hearing, and other evidence on the

19  record, it was reasonable for the ALJ to conclude that Mr. Palomares could communicate

20  sufficiently in English.  *See Burch*, 400 F.3d at 679 (when evidence is susceptible to more than one

21  rational interpretation, the ALJ's conclusion must be upheld).  Thus, if the ALJ was required to

22  consider language abilities at step four, the ALJ did not err in omitting a language limitation at step

23  four, nor was there any deviation from the DOT requirements and the hypothetical posed to the VE.

24  However, because this limits the work that Mr. Palomares can perform, it was error for the ALJ to

25  omit this limitation to one or two step tasks at step five, as explained below.

26  _____

27         [12]  The first instance where the transcript notes that Mr. Palomares responded in English was
    when he answered "Palomares" and then "Palomares Romano."  AR 289.  Mr. Palomares requests
    the Court take judicial notice that "Palomares" is a Spanish name and that the name in English is
28  also "Palomares," which the Court does.

United States District Court
For the Northern District of California

D.    <u>Use of the Grids</u>

At step five of the disability evaluation process, the burden of proving that the claimant can perform other jobs that exist in substantial numbers in the economy shifts to the Commissioner.  20 C.F.R. § 416. 920(f).  The Commissioner can satisfy this burden either by relying on the testimony of a vocational expert, or by applying the Medical-Vocational Guidelines ("grids").  *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).  An ALJ may properly rely on the grids instead of taking testimony from a VE only if the grids "accurately and completely describe a claimant's impairments."  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

The ALJ applied the grids "[b]ased on a [RFC] for the full range of heavy work, considering the claimant's age, education, and work experience" to find that Mr. Palomares was "not disabled" under Medical-Vocational Rule 204.00."[13]  AR 29.  Mr. Palomares argues that the use of the grids was error because the heavy RFC used in the grid analysis did not account for all the limitations that the ALJ had found for Mr. Palomares and thus exceeded his abilities.  Plaintiff's Motion at 5.  A claimant must be able to perform the full range of jobs in a given category in order for the Commissioner to appropriately rely on the grids.  *Bruton v. Massanari*, 268 F.3d 824, 827-28 (9th Cir. 2001) (holding that the ALJ erred in relying on the grids where the claimant's inability to lift his arms above ninety degrees was not reflected by the grids alone); *see also* SSR 96-8p ("[I]n order for an individual to do a full range of work at a given exertional level...the individual must be able to perform substantially all of the exertional and nonexertional functions required in work at that level.").  Because the ALJ had found that Mr. Palomares could perform heavy work "except on the left side" where Mr. Palomares could "only lift and or carry 10 pounds frequently, and 20 pounds occasionally, occasionally push or pull, reach, and reach overhead with the upper left extremity, is limited to occupations that do not require fine hearing capability, and can only perform work with one or two step tasks," the use of the grids for the "full range of heavy work" was not appropriate because it did not reflect his limitations.  AR 25.

---

[13]  Medical-Vocational Rule 204.00 states that "an impairment which does not preclude heavy work (or very heavy work) would not ordinarily be the primary reason for employment, and generally is sufficient for a finding of not disabled, even though age, education, and skill level of prior work experience may be considered adverse."

1    In addition, because the grids are based only on strength factors, they are not sufficient when

2 a claimant suffers from nonexertional limitations. *Holohan*, 246 F.3d at 1208. A nonexertional

3 limitation is an impairment that "limits the claimant's ability to work without directly affecting his

4 strength." *Bruton*, 268 F.3 at 828 (brackets omitted). Functional limitations caused by anxiety,

5 depression, concentration, and memory impairments are nonexertional limitations. 20 C.F.R. § 404.

6 1569(c)(I)-(iii); *see Holohan*, 246 F.3d at 1208-09 (holding that the ALJ committed "clear legal

7 error" by relying entirely on the grids when the claimant suffered from psychiatric impairments).

8 Mr. Palomares' limitations in his left upper extremity may also be considered non-exertional

9 limitations. *See Bruton*, 268 F.3d at 824 (stating that the claimant's limited range of motion in his

10 arms "may be considered an non-exertional limitation").

11    As discussed above, the ALJ properly found that Mr. Palomares suffered from the severe

12 impairment of depression and there is evidence in the record of Mr. Palomares' further problems

13 with anxiety as well. Thus, because the grids fail to account for Mr. Palomares' depression, his

14 lifting and reaching limitations on his left side, and his limitation to jobs with only one or two step

15 tasks, the ALJ erred in using them.

16    **IV.    CONCLUSION**

17    The Court may remand this case "either for additional evidence and findings or to award

18 benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the

19 proper course, except in rare circumstances, is to remand to the agency for additional investigation

20 or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).

21 Furthermore, "[r]emand for further proceedings is appropriate where there are outstanding issues

22 that must be resolved before a disability determination can be made, and it is not clear from the

23 record that the ALJ would be required to find the claimant disabled if all the evidence were properly

24 evaluated." *Taylor*, 659 F.3d at 1235 (reversing and remanding for the consideration of new

25 evidence submitted to the Appeals Council instead of awarding benefits).

26    In this case, Dr. Ho's opinion regarding Mr. Palomares' functional limitations, depression

27 and their effects on his ability to do work were not fully considered by the ALJ. The ALJ did not

28 address all of Mr. Palomares' limitations based on the whole record in his RFC assessment. A

United States District Court
For the Northern District of California

1  complete RFC assessment based on the record as a whole will allow for proper determinations in the

2  remaining steps of the disability analysis.  Because of the addition of the new evidence, unresolved

3  issues, and legal errors, the Court concludes that this matter should be remanded for further

4  administrative proceedings.  *See Harman v. Apfel*, 211 F.3d 1172, 1180 (2000) (holding that remand

5  for further proceedings was "particularly appropriate" where "neither the ALJ nor the vocational

6  expert had the full picture before them").

7       On remand, the ALJ is directed to reassess Mr. Palomares' RFC, including all of his relevant

8  limitations in light of the record as a whole, including Dr. Ho's opinion.  The ALJ is further directed

9  to reassess the step four conclusion in light of Mr. Palomares' complete RFC, and if necessary,

10  proceed to step five in light of this opinion.

11       For the foregoing reasons, the Commissioner's motion for summary judgment is **DENIED**

12  and Mr. Palomares' cross-motion for summary judgment is **GRANTED**.

13       This order disposes of Docket Nos. 18 and 19.

14

15       IT IS SO ORDERED.

16

17  Dated:  August 13, 2012

18  _____

19  EDWARD M. CHEN
    United States District Judge

20

21

22

23

24

25

26

27

28