UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR PALOMARES,<br><br>   Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE, Commissioner,<br>Social Security Administration,<br><br>   Defendant.<br>_____/ | No. C-11-4515 EMC<br><br>**ORDER GRANTING PLAINTIFF'S<br>MOTION FOR ATTORNEY'S FEES**<br><br>**(Docket No. 26)** |

## I. INTRODUCTION

Pending before the Court is Plaintiff Victor Palomares's Motion for Attorney's Fees under the Equal Access to Justice Act. (Pl.'s EAJA Mot., Docket No. 26.) After being denied disability insurance and SSI benefits by an Administrative Law Judge (ALJ) at the Social Security Administration (SSA), and having his request for review denied by the SSA Appeals Council, Mr. Palomares appealed to this Court and won a remand. This Court found the Appeals Council erred by not considering new evidence from Mr. Palomares's treating physician, Dr. Ho, which was material and may have altered the ALJ's determination. Plaintiff now seeks fees for bringing his appeal and this fee motion. For the reasons discussed below, the Court hereby **GRANTS** Plaintiff's motion for attorney's fees in the amount of $6953.53.

## II. FACTUAL & PROCEDURAL BACKGROUND

Mr. Palomares filed for disability insurance and SSI benefits on November 24, 2006, claiming an inability to work based on his injury and subsequent repair surgery in 2004. *Palomares*

*v. Astrue,* No. C-11-4515 EMC, 2012 WL 3313535, at *2 (N.D. Cal. Aug. 13, 2012). The SSA denied his applications initially and upon reconsideration in 2007 and 2008. *Id*. Mr. Palomares subsequently retained counsel and requested a hearing by an ALJ. *Id.* The hearing was conducted on May 7, 2009. *Id.* at *3. At the hearing, the ALJ heard testimony from Mr. Palomares and a vocational expert ("VE"). *Id.*

On June 3, 2009, the ALJ concluded that Mr. Palomares suffered from severe impairments but that he was not entitled to disability benefits because he was capable of performing his past relevant work as an industrial-truck operator. *Id.* In the alternative, the ALJ found that Mr. Palomares could perform other work as well and thus was not disabled. *Id.* The ALJ evaluated Mr. Palomares's claim of disability using the five-step sequential evaluation process for disability required under 20 C.F.R. §§ 404.1520 and 416.920. *Id.*

> Step one disqualifies claimants who are engaged in substantial gainful activity from being considered disabled under the regulations. Step two disqualifies those claimants who do not have one or more severe impairments that significantly limit their physical or mental ability to conduct basic work activities. Step three automatically labels as disabled those claimants whose impairment or impairments meet the duration requirement and are listed or equal to those listed in a given appendix. Benefits are awarded at step three if claimants are disabled. Step four disqualifies those remaining claimants whose impairments do not prevent them from doing past relevant work. Step five disqualifies those claimants whose impairments do not prevent them from doing other work, but at this last step the burden of proof shifts from the claimant to the government. Claimants not disqualified by step five are eligible for benefits.

*Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003).

At step one, the ALJ stated that there was no evidence that Mr. Palomares had engaged in substantial gainful activity since December 15, 2004, the alleged disability onset date. *Palomares,* 2012 WL 3313535, at *2. At the second step, the ALJ concluded that Mr. Palomares suffered from the following severe impairments: rotator cuff injury, depression, and hearing loss. *Id*. At the third step, the ALJ determined that none of these impairments or a combination of impairments were listed in or were the medical equivalent of an impairment listed in the relevant appendix. *Id.* at *3.

At the beginning of step four, the ALJ concluded that Mr. Palomares has the residual functional capacity ("RFC") to perform heavy work as defined in 20 C.F.R. § 416.967(a) except on

the left side. *Id*. On the left side, the ALJ determined that Mr. Palomares could "only lift and or carry 10 pounds frequently, and 20 pounds occasionally, occasionally push or pull, reach, and reach overhead with the left upper extremity." *Id.* The ALJ also concluded that Mr. Palomares is limited to occupations that do not require fine hearing capability and that he can only perform work with one or two-step tasks. *Id.* The ALJ rejected Mr. Palomares's excess pain testimony, finding that while the "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms[,] the claimant's statements concerning the intensity and persistence and limited effects of these symptoms are not credible to the extent that they are inconsistent with the [RFC] assessment." *Id.* To support this adverse credibility finding, the ALJ reasoned that despite his claims of disabling pain, Mr. Palomares was only prescribed Naprosyn without any stronger pain medications, was not on any medicine when he was examined by physicians in December 2006 and February 2008, could perform some household chores, went outside two to three times daily, and could at times relieve his pain simply by resting, exercising, or using an ice pack. *Id.* On review, this Court did not directly consider this adverse credibility finding. *Id.* at *10 n. 9.

At step four, the ALJ relied on two hypotheticals posed to a VE in which Mr. Palomares was given a heavy RFC limited to occasional pushing, pulling and reaching on the left side. *Id.* at *3. For the second hypothetical, the ALJ added the restriction of lifting ten pounds frequently and twenty pounds occasionally on the left side. *Id.* Both hypotheticals had a limitation of no fine hearing. *Id.* Based on these limitations, the VE testified for both hypotheticals that Mr. Palomares could perform his previous occupation as it is described in the Dictionary of Occupational Titles (DOT). *Id.* Thus, the ALJ concluded that Mr. Palomares could perform his past relevant work as a forklift operator and was therefore not disabled. *Id.*

Although he had already found that Mr. Palomares was not disabled at step four, the ALJ continued to the fifth step to determine that "considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id*. To make this determination, the ALJ applied the Medical-Vocational Guidelines ("grids") based on an "[RFC] for the full range of heavy work." *Id.* The ALJ concluded

3

that Mr. Palomares was not disabled under sections 261(I), 223(d), and 114(a)(3)(A) of the Social Security Act from December 15, 2004 through the date of the hearing. *Id.*

Mr. Palomares requested review of the ALJ's unfavorable decision by the Appeals Council. *Id.* at *4. Supplementing this request, Mr. Palomares submitted the assessment of his then treating physician, Dr. Ho, and the Appeals Council made the document part of the record on August 8, 2011. *Id.* This additional evidence was a physical RFC questionnaire that indicated that Dr. Ho had seen Mr. Palomares regularly since 2008. *Id.* Based on the results of an x-ray taken on July 9, 2010, the questionnaire identified a decreased range of motion at the left shoulder and neck, and calcific tendinitis of the left shoulder as a result of Mr. Palomares' surgery in 2004. *Id.* The opinion noted that Mr. Palomares reported a constant pain of seven out of ten that was exacerbated by motion and reaching. *Id*. It was consistent with Dr. Ho's progress notes, which were part of the record considered by the ALJ that show that Dr. Ho had prescribed Ibuprofen 800 for Mr. Palomares's pain. *Id.* Dr. Ho also opined that depression contributed to the severity of Mr. Palomares's symptoms and that he was only capable of low stress jobs due to his "severe" depressive symptoms. *Id.*

On August 8, 2011, the Appeals Council denied Mr. Palomares's request for review, concluding that the additional evidence did not provide a basis for challenging the ALJ's decision. *Id.* Mr. Palomares then sought judicial review by this Court requesting that the case be remanded to the Commissioner with instructions to award all disability benefits due to him, or alternatively, with instructions regarding proceedings on remand. *Id.* This Court remanded, "[b]ecause of the addition of the new evidence, unresolved issues, and legal errors." *Id.* at*16. Specifically this Court directed the ALJ to reassess Mr. Palomares's RFC, including all of his relevant limitations in light of the whole record, including Dr. Ho's opinion, to reassess the step four conclusion in light of Mr. Palomares's complete RFC, and if necessary, to proceed to step five in light of this opinion. *Id.*

Following the Court's order remanding this case, Mr. Palomares filed the current motion seeking attorney's fees from August 25, 2011 until the present, which encompasses all fees accrued during this Court's review of the case and subsequent fee litigation. (See Pl.'s EAJA Mot., Docket No. 26, Ex. 2.)

4

## III. DISCUSSION

A. Equal Access to Justice Act

Mr. Palomares seeks fees under the Equal Access to Justice Act, which provides that

> a court shall award to a *prevailing party* other than the United States fees and other expenses... incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was *substantially justified* or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphasis added).

### 1. Prevailing Party

There is no dispute in this case that Mr. Palomares, on winning a remand from this Court, became the prevailing party for purposes of the Equal Access to Justice Act. The Commissioner concedes this point in his Opposition Motion. (Def.'s Opp'n to Pl.'s EAJA Mot. ("Def.'s Opp'n"), Docket No. 27, at 4.)

Furthermore, in *Shalala v. Schaefer,* the Supreme Court distinguished two remand scenarios for the purpose of defining a "prevailing party" pursuant to 42 USC § 405(g): a sentence-six remand and a sentence-four remand. 509 U.S. 292, 296-97 (1993). Sentence-six remands may be issued only in two situations: "where the Secretary requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency." *Id.* at 297. In a sentence-four remand, the district court rules on whether the Commissioner properly considered the claimant's application for benefits. *Flores v. Shalala,* 49 F.3d 562, 568 (1995). As in *Flores,* this Court issued a sentence-four remand as the Commissioner made no request for remand and the evidence warranting the remand, Dr. Ho's opinion, was part of the administrative record and not "new material." *Id.* at 569. Obtaining a sentence-four remand satisfies the "prevailing party" determination. *Schaefer,* 509 U.S. at 302.

### 2. Substantially Justified Position

#### a. Statement of Law

After determining that Mr. Palomares was the "prevailing party," the Court must next decide whether the Commissioner's positions in the district court proceeding were substantially justified

5

before awarding attorney's fees. *See Pierce v Underwood*, 487 U.S. 552, 564 (1988). The word "substantial" for the purposes of the Equal Access to Justice Act means justified in substance or in the main or, in other words, not justified to a degree that would satisfy a reasonable person and with a reasonable basis in fact and law. *Id.* at 565. The government has the burden of demonstrating that its position was substantially justified. *Kali v. Bowen,* 854 F.2d 329, 332 (1988). An adverse summary judgment ruling does not necessarily demonstrate that the government's position was not substantially justified. *Id.* at 333.

This Court must also decide what positions the government must substantially justify. Under the EAJA, "'position of the United States' means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D). The government's position must be "substantially justified" at "each stage of the proceedings." *Corbin v. Apfel,* 149 F.3d 1051, 1052 (9th Cir. 1998) (quoting *Williams v. Bowen,* 966 F.2d 1259, 1261 (9th Cir.1991)). However, the Court need only consider the government's positions in defending the decisions by the ALJ and Appeals Council on which the district court reversed, and it need not consider the positions on any other questions, including the ultimate issue of disability. *See Flores,* 49 F.3d at 566. For example, In *Lewis v. Barnhart,* the district court had remanded because "clear direct evidence" showed that the claimant could not perform her past work. 281 F.3d 1081, 1086 (9th Cir. 2002). Thus, the relevant test was whether the Commissioner was substantially justified in taking the position that the claimant could perform her past work. *Id.*

Finally, a court need only find that one of the government's positions was not substantially justified to award fees under the EAJA. *See Commissioner, I.N.S. v. Jean,* 496 U.S. 154, 160 (1990) (finding "[t]he single finding that the Government's position lacks substantial justification, like the determination that a claimant is a 'prevailing party,' thus operates as a one-time threshold for fee eligibility").

    b. <u>Application to This Case</u>

In this case, the Commissioner must therefore be substantially justified in defending the ALJ's and the Appeals Council's decisions on issues for which this Court remanded. Here, the

Court considered four different potential grounds for remand: (1) the Commissioner's position that the Court could not consider Dr. Ho's opinion with a showing of good cause, (2) the Appeals Council's rejection of Dr. Ho's opinion, (3) the discrepancy between the VE's testimony and the job description in the DOT, and (4) the ALJ's use of the grids at step five. *Palomares,* 2012 WL 3313535.

The third issue does not need to be considered by the Court in evaluating Plaintiff's motion for fees, as only decisions on which a court remanded are relevant for purposes of substantial justification. *See Flores,* 49 F.3d at 566. The Court found the VE's testimony did not conflict with the DOT and therefore the ALJ did not err. *Palomares,* 2012 WL 3313535, at *12.

i. District Court Consideration of Dr. Ho's Opinion

This Court must first address the position taken by the Commissioner regarding this Court's consideration of Dr. Ho's opinion. On review, the Commissioner argued that evidence presented for the first time to the Appeals Council could not be considered by this Court because Plaintiff had failed to show good cause and thus satisfy the criteria of sentence six of 42 U.S.C. § 405(g). (Def.'s Opp'n 6.) Section 405(g) deals with judicial review by a district court of a final decision by the Commissioner of Social Security. 42 U.S.C. § 405(g). Sentence-six of that section states in relevant part that a district court

> may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405(g).

The Commissioner argues that this position was substantially justified because, at the time it filed its Cross-Motion for Summary Judgment, the law governing the standard for review of evidence submitted for the first time to the Appeals Council was not clear. (Def.'s Opp'n 6.) *Compare Mayes v. Massanari,* 276 F.3d 453 (9th Cir. 2001) (holding that Plaintiff failed to show good cause for evidence presented for the first time to the Appeals Council), *with Ramirez v. Shalala,* 8 F.3d 1449 (9th Cir. 1993) (reviewing "new" evidence without addressing whether "new" submissions to the Appeals Council are subject to the good cause requirement). It was not until the

recent decision in *Brewes v. Comm'r of Soc. Sec. Admin.,* that the Ninth Circuit explicitly stated that Section 405(g) materiality "applies only to new evidence that is not part of the administrative record and is presented in the first instance to the district court." 682 F.3d 1157, 1164 (9th Cir. 2012).

This Court also acknowledged the possible ambiguity surrounding this issue, finding that "[w]hile there may have been some ambiguity on the applicability of sentence six prior to the *Brewes* decision, the Ninth Circuit has now made it clear." *Palomares,* 2012 WL 3313535, at *8. In *Kali v. Bowen,* the government was substantially justified in appealing the case because the Ninth Circuit had not yet ruled on the issue, other circuits had not yet or were in the midst of publishing opinions on the issue, and because the government's interpretation was a reasonable one. 854 F.2d 329*,* 331 (9th Cir. 1988). The Ninth Circuit held, in the attorney's fees context, "[i]f the question of law is unresolved and of unclear resolution, then the government's litigation of the issue is reasonable and substantially justified." *Id.* at 330-31.

In light of *Mayes,* it was reasonable to believe that a showing of good cause was required for a district court to review evidence presented in the first instance to the Appeals Council, and therefore the Commissioner was substantially justified to take such a position. Furthermore, after the *Brewes* decision, the Commissioner filed a "Statement of Recent Decision" pursuant to Local Rule 7-3(d)(2) alerting the Court to this new decision. (Def.'s Opp'n 6.)

### ii.     Appeals Council's Rejection of Dr. Ho's Opinion

The Commissioner argues that even if the Court were to consider Dr. Ho's opinion, the Commissioner's defense of the Appeals Council's rejection of this opinion for lack of credibility was substantially justified. (Def.'s Opp'n 6.) As stated above, when Mr. Palomares requested review by the Appeals Council of the ALJ's unfavorable opinion, he supplemented his request with the assessment by his then treating physician, Dr. Ho. *Palomares,* 2012 WL 3313535, at *4. This additional evidence was a physical RFC questionnaire that indicated that Dr. Ho had seen Mr. Palomares regularly since 2008. *Id.* Based on the results of an x-ray taken on July 9, 2010, the questionnaire identified a decreased range of motion at the left shoulder and neck, and calcific tendinitis of the left shoulder as a result of Mr. Palomares's surgery in 2004. *Id.* The opinion noted that Mr. Palomares reported a constant pain of seven out of ten that was exacerbated by motion and

reaching. *Id.* It was consistent with Dr. Ho's progress notes, which were part of the record considered by the ALJ, that show Dr. Ho had prescribed Ibuprofen 800 for Mr. Palomares's pain. *Id.*

The Commissioner argued that the Appeals Council's rejection of Dr. Ho's opinion was reasonable and it should not affect the ALJ's decision since the opinion was based on Mr. Palomares's subjective complaints being fully credited by Dr. Ho. *Palomares,* 2012 WL 3313535, at *9; (*see also*Def.'s Opp'n 6) (citing *Bayliss v. Barnhart,* 427 F.3d 1211, 1217 (9th Cir. 2005). The Commissioner further argued that the ALJ gave "clear and convincing" reasons why Mr. Palomares was not credible.[1] *Palomares,* 2012 WL 3313535, at *9. The Court did not directly consider the sufficiency of the ALJ's credibility determination; however it found that if the whole record including Dr. Ho's opinion were considered, the ALJ's conclusion may have been materially affected despite the ALJ's rejection of the credibility of Mr. Palomares's pain reports. *Id.* at *10 n. 9.

The Court also found Dr. Ho's opinion was material in that it could have altered the ALJ's assessment of Mr. Palomares's functional limitations. *Id.* at *9, 16. Unlike in *Bayliss,* in which the ALJ rejected a physician's opinion that "was not supported by clinical evidence and was based on Bayliss's subjective complaints," 427 F.3d at 1217, Dr. Ho's opinion explicitly relied on objective evidence such as Mr. Palomares's decreased range of motion, an x-ray and Mr. Palomares's surgery in 2004. *Palomares,* 2012 WL 3313535, at *9.

Dr. Ho also found that Plaintiff was severely depressed and found a link between this depression and his subjective symptoms. *Palomares,* 2012 WL 3313535, at *9-10. This Court found that consideration of Dr. Ho's opinion regarding Mr. Palomares's depression could have affected both the credibility determination regarding Mr. Palomares's pain and his ability to do work in his RFC assessment. *Id.* at *11.

---

[1] To support this adverse credibility finding, the ALJ reasoned that despite his claims of disabling pain, Mr. Palomares was only prescribed Naprosyn without any stronger pain medications, was not on any medicine when he was examined by physicians in December 2006 and February 2008, could perform some household chores, went outside two to three times daily, and could at times relieve his pain simply by resting, exercising, or using an ice pack. *Palomares,* 2012 WL 3313535, at *3.

9

The Commissioner takes the position that since Dr. Ho also cited shoulder and neck pain as a "diagnosis" and expressly noted Mr. Palomares's report of constant pain at a level of seven, it was reasonable for the Appeals Council to conclude Dr. Ho's opinion was based largely on subjective complaints. (Def.'s Opp'n 7.) However, the Appeals Council did not give specific and legitimate reasons for disregarding Dr. Ho's opinion when rejecting review. *Palomares,* 2012 WL 3313535, at *8, 9. As this Court noted, "the brief and conclusory rejection that it [the Council] gave would not have been legally sufficient because it failed to address the uncontroverted parts of Dr. Ho's opinion that are not based solely on Mr. Palomares's subjective complaints." *Id.* at *6.

Furthermore, this Court noted, "Dr. Ho did not rely solely or substantially on Mr. Palomares's self-reported pain which the ALJ rejected; rather, her opinion is based on objective clinical observation and evidence." *Palomares,* 2012 WL 3313535, at *9. This case is thus distinguishable from *Bayliss* in which the new evidence was almost exclusively comprised of subjective complaints. *Bayliss,* 427 F.3d at 1217.

The Commissioner's position is particularly problematic given Dr. Ho was Mr. Palomares's treating physician. If the treating physician's opinion is contradicted by another physician, the agency may only disregard the treating physician's opinion if it sets forth "specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Murray v. Heckler,* 722 F.2d 499, 502 (9th Cir. 1983). "The rationale for giving the treating physician's opinion greater special weight is that he is employed to cure and has greater opportunity to know and observe the patient as an individual." *McAllister v. Sullivan,* 888 F.2d 599, 602 (9th Cir. 1989) (citing *Winans v. Bowen,* 853 F.2d 643, 647 (9th Cir. 1987)).

The Appeals Council must review new evidence if the evidence is "material" and "relates to the period on or before the date of the administrative law judge hearing decisions." *Rice v. Apfel*, 16 F. Supp. 2d 971, 974 (N.D. Ill. 1998) (quoting 20 C.F.R. § 416.1470(b)). There is no indication the Appeals Council did so here, even thought the evidence was material and contained the opinion of a treating physician. The Commissioner's position on this issue is not substantially justified. *See, e.g., Gillman v. Astrue,* 829 F. Supp. 2d 999, 1007 (W.D. Wash. 2011) (finding Commissioner's defense of ALJ's decision to elevate examining physician's opinion over opinion of treating

physician and Plaintiff's subjective testimony was not substantially justified); *Evans v. Sullivan,* 928 F.2d 109, 112 (4th Cir. 1991) (finding government was not substantially justified where ALJ failed to accord treating physician's uncontradicted opinion great weight, ignored medical testimony contrary to finding of nondisability, misread medical reports and failed to discuss complaints of pain); *Anderson v. Astrue,* 2011 U.S. Dist. LEXIS 62862, at *41-42 (N.D. Ill. June 13, 2011) (finding position was not substantially justified where ALJ improperly ignored significant medical evidence as to claimant's impairments); *Lewis v. Apfel*, No. 95 Civ. 5400(WK), 1998 WL 66012, at *3 (S.D. N.Y. Feb. 18, 1998) (finding Commissioner was not substantially justified where ALJ failed to sufficiently consider testimony from treating physician, failed to fully consider evidence before him and overall failed to assist pro se Plaintiff).

### iii. ALJ Use of the Grids

The Commissioner was also not substantially justified in defending the ALJ's application of the grids. This Court noted in its remand that, since the ALJ had already concluded that Mr. Palomares could not perform heavy work on his left side, is limited to occupations that do not require fine hearing capability, and can only perform work with one or two tasks, it was inappropriate for the ALJ to apply the grids based on a "full range of heavy work." *Id.* at *15. There is no reasonable basis in fact for establishing or defending this position. *See Pierce,* 487 U.S. at 565; *Singleton v. Astrue,* 2010 WL 2772625 at *1 (E.D. Wis. July 13, 2010) (finding no substantial justification when, among other problems, ALJ "contradicted herself by concluding that [claimant] could perform [a] semi-skilled job… after finding her only able to do unskilled work.")

B.  Reasonableness of Fee

The Commissioner further argues that even if his position was not substantially justified, the fees Plaintiff requests are unreasonable under the statute. (Def.'s Opp'n to Pl.'s EAJA Mot. 8.) Specifically, the Commissioner claims the 9.5 hours Plaintiff's counsel billed for his Motion for Summary Judgment are excessive given that its argument section was only three pages. *Id; see also Hensley v. Eckhart,* 461 U.S. 424, 433 (1983) (holding a reasonable fee does not include hours that are "excessive, redundant, or otherwise unnecessary"). The Commissioner further argues that billing 4.3 hours for an EAJA motion less than five pages in length and 6.7 hours for reviewing and

11

replying to Defendant's Cross-Motion for Summary Judgment is similarly excessive. *Id.* at 9. Finally, the Commissioner states Plaintiff's counsel's billing statement also includes clerical tasks, which are not compensable under the EAJA. *Id.* The Commissioner does not object to the hourly rate. *See id.*

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckhart,* 461 U.S. 424, 433 (1983). The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. *Id.* The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." *Id.* Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. *Id.* Normally, this fee will encompass all hours reasonably expended on the litigation and, in some cases of exceptional success, an enhanced award may be justified. *Id.* The EAJA gives the district court discretion and flexibility in adjusting the reasonable fee amount to award a prevailing party. *Commissioner, I.N.S. v. Jean,* 496 U.S. 154, 161 (1990). Fees may also be awarded for work reasonably required to secure an award of fees. *See id.*

Mr. Palomares is seeking a total of 37.9 hours in attorney's fees. (Pl.'s Reply, Docket No. 28 at 2, 5.) This is reasonably within the range generally permitted by other courts for this type of litigation. *See, e.g., Penrod v. Apfel,* 54 F. Supp. 2d 961, 964 (D. Ariz. 1999) (holding 28.8 hours was a reasonable expenditure of time in a social security disability case); *Sorich v. Shalala,* 838 F. Supp. 1354, 1359 (D. Neb. 1993) (holding Plaintiff's counsel reasonably expended 41.25 hours in obtaining a remand); *Patterson v. Apfel,* 99 F. Supp. 2d 1212, 1215 (C.D. Cal. 2000) (finding Plaintiff entitled to EAJA fees for 37.25 hours); *Afanador v. Sullivan,* 809 F. Supp. 61, 66 (N.D. Cal. 1992) (granting EAJA motion for 22.3 hours of work performed by Plaintiff's attorney and 9.5 hours performed by attorney's clerk); *Hardy v. Callahan,* No. 9:96-CV-257, 1997 WL 12806, at *10, n. 10 (E.D. Tex. 1997) (noting that "[t]he typical EAJA application in social security cases claims

///

///

///

between thirty and forty hours"). Mr. Palomares's Counsel's hours are thus not outside the bounds of other EAJA fee awards.[2]

Furthermore, the bill demonstrates that Mr. Palomares's counsel spent 4.3 hours on a four-page EAJA Motion and 6.7 hours on reviewing Defendant's Cross-Motion for Summary Judgment and drafting a six-page Reply. *See* (Pl.'s EAJA Mot. Ex. 2.) Devoting one hour per page of work spent on the EAJA motion and the Reply is not excessive. Even the 9.5 hours for writing the three page Motion for Summary Judgement is reasonable given the 320 page administrative record, which counsel had to review in drafting his motion. (*See* Def.'s Opp'n to Pl.'s EAJA Mot. 8.)

As to the alleged clerical work, it is true that "[w]hen clerical tasks are billed at hourly rates the court should reduce the hours requested to account for the billing errors." *Nadarajah v. Holder,* 569 F.3d 906, 921 (9th Cir. 2009). Here, however, the activities in question are not actually clerical. In *Nadarajah,* the activities considered clerical were filing, obtaining transcripts and document organization. *Id.* Here, the Commissioner contests counsel's entries stating: "Download & Calendar chen sched order, ss standing order, chen standing order, review ECF rules" (0.4 hours), and "Draft civil cover, cover to clerk, mail" (0.3 hours). (Def.'s Opp'n 9) (quoting Pl.'s EAJA Mot. Ex. 2). These entries include legal work and clerical work mixed together. For the entry that states draft civil cover, cover to clerk and mail it, counsel likely spent the majority of this time drafting and could have easily made this entry just say "draft civil cover." Similarly, downloading and reviewing the ECF orders could have easily been depicted as "review ECF orders," as downloading the orders would constitute a de minimis amount of time. Counsel should not be punished for being meticulous and honest.

///

///

///

---

[2] Plaintiff is seeking rates of $180.59 and $183.73 per hour for work completed in 2011 and 2012 respectively, which constitutes the adjusted maximum rate for each year according to the Ninth Circuit website. http://www.ca9.uscourts.gov/content/view.php?pk_id=0000000039 *see* 9th Cir., Statutory Maximum Rates under EAJA (last visited Nov. 29, 2012). The Commissioner does not contest the hourly rate.

13

1    Therefore, the Court awards fees for all 37.9 hours incurred at an hourly rate of $180.59 for
2    2011 and $183.73 for 2012, for a total of $6953.63.[3]

C.  Pay Fees Directly to Attorney

The Commissioner also contests Mr. Palomares's request to have the fees paid directly to counsel. (Def.'s Opp'n 4.) In *Astrue v. Ratliff,* the Supreme Court confirmed the common practice that an EAJA fee award is payable to the litigant and not the attorney unless the party does not owe a debt to the government and assigns the right to receive fees to the attorney. 130 S. Ct. 2521, 2529 (2010); *see also Quade ex rel. Quade v. Barnhart,* 570 F. Supp. 2d 1164 (D. Ariz. 2008) (finding the amount awarded, subject to any legitimate offset would then be paid directly to Plaintiff's council). Since Mr. Palomares has already assigned any potential award to his attorney, the Court directs that attorney's fees, subject to any debt offset, be paid directly to Mr. Palomares's counsel. (*See* Pl.'s EAJA Mot., Retainer Agreement.)

D.  Notice of Claimed Offset

Mr. Palomares is requesting an order requiring the Commissioner to disclose if it contends that Mr. Palomares has debt that qualifies for an offset against the awarded fees, as well as a basis for that contention. (*See* Pl.'s Proposed Order, Docket No. 26-4, at 2.) This language comes from a case called *Bender v. Astrue,* No. C 10-05333-MR, 2012 WL 113357, at *4 (N.D. Cal. Jan. 12, 2012), in which the court ordered the Commissioner to notify the Plaintiff within twenty-one days if the Commissioner contended there was debt to offset the award. The court in *Bender* did not cite any legal authority for issuing this order. *See Id.* Mr. Palomares is essentially seeking notice of any claimed offset and argues that if the Commissioner is going to use an offset by the Treasury Department to excuse payment, that Mr. Palomares is entitled to proper notice and an opportunity to defend such offset. (Pl.'s Reply 6.) Mr. Palomares further contends that he has already assigned this award to counsel without being notified of any offset. (*Id.*)

---

[3] Plaintiff's counsel applies an hourly rate of $183, instead of the correct rate of $183.73, to the hours accounted for in his reply declaration. (*See* Pl.'s Reply, Supp. Weathered Decl.) Similarly, Plaintiff's counsel omits 0.4 hours billed in his initial declaration. (*See* Pl.'s EAJA Mot., Weathered Decl.) Thus, Plaintiff underestimates his total fee award to be $6945.50.

There is no law stating that the Court must order the Commissioner to notify a plaintiff of an offset. Under 31 U.S.C. § 3716, the head of an administrative agency may collect a debt by administrative offset only after giving the debtor written notice. 31 U.S.C. § 3716(a)(1). In *Astrue v. Ratliff,* the Social Security Administration notified the Plaintiff of an offset according to § 3716. 130 S. Ct. 2521, 2522 (2010). In *McCarty v. Astrue,* the Treasury Department sent Plaintiff notice of its intent to collect a debt by offsetting the EAJA award. 505 F. Supp. 2d 624, 632 (N.D. Cal. 2007). The court in *McCarty* held that Plaintiff's due process rights were not violated by Defendant's failure to give notice that Plaintiff's EAJA award was eligible for an offset. *Id.* There is no dispute that notice must be given under § 3716 before an EAJA award can be offset. Since § 3716 applies, the Court declines to order the Commissioner to give special notice within twenty-one days if it contends the awarded EAJA amount is subject to an offset.

## IV.   CONCLUSION

In sum, the Court **GRANTS** Plaintiff's Motion for attorney's fees under the Equal Access to Justice Act in the amount of $6953.63. The fee should be paid directly to Mr. Palomares's counsel, subject to any administrative offset due to Mr. Palomares's outstanding federal debt, if any exists.

This order disposes of Docket No. 26.

IT IS SO ORDERED.

Dated: December 18, 2012

_____
EDWARD M. CHEN
United States District Judge

15